**Deborah KENT, Appellant,**

v.

**Richard S. SCHWEIKER, Secretary, Department of Health and Human Services, Appellee.**

No. 82–5230.

United States Court of Appeals, Third Circuit.

Argued Feb. 28, 1983.

Decided June 22, 1983.

---

Marc L. Ames, Robert S. Barlow (argued), New York City, for appellant.

W. Hunt Dumont, U.S. Atty., James H. Cooper, Lorraine S. Gerson (argued), Asst. U.S. Attys., Newark, N.J., for appellee.

Before ADAMS, WEIS and BECKER, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

Deborah Kent appeals from an order of the district court granting summary judgment for the Secretary of Health and Human Services in this action to review the Secretary's final determination denying ap-

pellant's application for social security disability insurance benefits. Finding that the Secretary's ruling is not supported by substantial evidence, we will vacate and remand for further proceedings consistent with this opinion.

## I.  *Factual Background*

Appellant was employed by the New York City Board of Education as a teacher of the handicapped. On October 14, 1977, appellant was walking with a semi-ambulatory retarded student who grew tired of walking and pulled appellant to the ground. Appellant felt sharp pains in her back and promptly sought medical treatment. Within a week, she was admitted to Montefiore Hospital as an emergency patient. There followed a long course of intensive treatment for low-back problems, which have persisted throughout the timeframe of the record in this case.

Appellant has proffered evidence that, since the time of her injury, she has suffered continuous and disabling pain in her back and has derived no comfort from the continuing medical attention that she has received. In her quest for relief from the pain, appellant has undergone hospitalization (consisting principally of bed rest, traction, and medication), has received nerve blocks and extensive physical therapy, has worn a transcutaneous nerve stimulator, and has taken large dosages of medication. Testifying at the hearing before the ALJ, appellant stated that she is in virtually constant pain; that she uses a cane and can walk only two blocks without pain; that she is comfortable only when lying down; that she is able on a typical day to do nothing but read, watch television, and hook rugs; and that she has only very limited ability to sit, stand, bend, walk, lift, and reach. Appellant, who lives with her mother, also said that she cannot perform even simple housework. She will not use public transportation and is afraid to go outside. She also testified that she takes a great amount of medication that makes her feel "spacey" and disoriented, affecting her ability to think.

Although appellant has had transient periods of remission, and although she possesses a Master's Degree in counseling, has an excellent prior work history, and appears to have been quite motivated, she testified that, between the time relevant for the disability determination (June 12, 1979) and the date of the ALJ's decision (July 25, 1980), she could not do any kind of work. And she has adduced medical evidence to support this contention: Dr. Irving J. Estrin, a specialist in physical medicine, Dr. David Kaufman, a neurologist, and Dr. Melvin Adler, an orthopedic surgeon, have concluded, in written reports submitted to the Secretary, that appellant's low-back condition has rendered her totally unfit to perform any gainful employment.[1] These doctors also agree that appellant's ability to sit, stand, walk, bend, squat, crawl, or climb is extremely limited and that she cannot frequently lift or carry objects of any substantial weight. Indeed, Drs. Estrin and Adler, the physicians who have seen her most often during the past two years, stated that, in the course of an eight-hour workday, appellant would have the capacity to sit, stand or walk for only two hours each.

Appellant also claims that her physical disorder has caused her to develop a severe emotional impairment for which she has had regular consultation with a psychologist, Dr. Martha Schon. Dr. Schon has stated that appellant "suffers from anxiety and depression, reactive to physical injury which incapacitates her severely." Appellant asserts that her depression also adversely affects her employability.

## II.  *The Administrative Proceedings*

Despite the consensus of medical opinion in appellant's favor, the Secretary did not

1.  These specialists have also opined that there is a basis for appellant's low-back complaints, i.e., that she suffers from a serious low-back syndrome, probably caused by a herniated disc at L4–L5 with radiation down the legs, and that this chronic condition prevents appellant from returning to the type of work that she was doing before her injury. The New York State Bureau of Disability Determination also had found, and the Secretary concedes, that appellant is unable to perform her former employment.

have a physician—either an orthopedic surgeon or a neurologist—evaluate appellant's back condition. Nor did he ask a psychologist or psychiatrist to evaluate appellant's mental health. Accordingly, both the Administrative Law Judge ("ALJ") and the Secretary, in rendering their decisions, necessarily relied upon the only medical reports before them: the reports of appellant's own physicians. In addition, the ALJ evaluated appellant's credibility and the "record as a whole."

Notwithstanding the absence of medical evidence supporting the Secretary's position, the ALJ concluded that appellant's impairments and pain, considered either alone or together, "are not of a level of severity to have prevented the claimant from engaging in substantial gainful activity." He found that appellant's allegation of disabling pain "is not fully credible in view of the physical symptoms and signs accompanying the impairments, claimant's range of physical activities, claimant's efforts to relieve the alleged pain, and claimant's appearance, demeanor, and ability to tolerate the hearing procedure." Conceding that appellant's impairments prevented her from resuming any of her previous work activities, see supra note 1, and that her past relevant work, while skilled, provided no transferable skills, the ALJ nevertheless concluded that appellant was able to engage in sedentary work activity [2] and that the Social Security "grid" regulations, 20 C.F.R. § 404.1569 & App. 2, therefore mandated a finding that appellant was not prevented, for any twelve-month period beginning on or before the date of the decision, from engaging in substantial gainful activity.

The ALJ's underlying analysis and the basis for his ultimate conclusions may be summarized as follows:

1. The physicians who had examined appellant did not indicate that she would be incapable of engaging in sedentary work activity; rather, Drs. Estrin and Adler stated that appellant would be able to sit, stand, or walk for two hours each in the course of an eight-hour workday;

2. Drs. Estrin and Adler stated that appellant occasionally could lift up to ten pounds;

3. There was no evidence that appellant did not retain substantial use of her arms or hands for any activities;

4. Appellant's condition improved after each hospital stay;

5. Appellant's receipt of a retirement pension in the amount of $12,000 per year from her former employer "cannot help but cause questioning as to her motivation to return to work";

6. The frequency of appellant's visits to physicians for treatment was not consistent with appellant's complaints of severe pain;

7. The unwillingness of appellant's regular physicians to consider a myelogram or surgery suggested that the doctors did not believe appellant's condition to be severe enough to require drastic intervention and tended to negate appellant's expressions of severe pain;

8. "Claimant's testimony as to her activities," as well as "other objective medical evidence of record," (the ALJ did not explain what he meant by these two phrases) did not indicate disability;

9. The periods of time during which appellant was incapable, "based on the objective medical evidence," of engaging in work activity never lasted for a period "remotely approaching" the continuous period of twelve months required by the Act;

10. "Above all," appellant's "appear-

---

**2.** Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

ance and demeanor at the hearing"[3] did not support her claim.

Accordingly, the ALJ concluded that, except during periods of exacerbation, appellant retained the residual functional capacity to engage in sedentary work.

The ALJ's decision denying benefits was later adopted by the Appeals Council and became the final decision of the Secretary. The district court, after reviewing the administrative record and the parties' briefs, granted the Secretary's motion for summary judgment. This appeal followed.

III.  *The Absence of Substantial Evidence*

■ As we reiterated in *Olsen v. Schweiker,* 703 F.2d 751, 753 (3d Cir.1983), "[t]he process employed to determine whether plaintiff is entitled to benefits involves shifting burdens of proof."

There is a two-pronged test for social security act disability: (1) determination of the extent of disability; and (2) determination whether that impairment results in inability to engage in substantial gainful activity. A claimant satisfies her initial burden of proof by showing that she is unable to return to her customary occupation. *E.g., Stark v. Weinberger,* 497 F.2d 1092 (7th Cir.1974); *Baker v. Gardner,* 362 F.2d 864 (3d Cir.1966). Once she has made such a demonstration, the burden of proof shifts to the Secretary to show that the claimant, given her age, education and work experience, has the capacity to perform specific jobs that exist in the national economy. *E.g., Lewis v. Weinberger,* 541 F.2d 417 (4th Cir. 1976); *Hernandez v. Weinberger,* 493 F.2d 1120 (1st Cir.1976).

*Rossi v. Califano,* 602 F.2d 55, 57 (3d Cir. 1979). Appellant here satisfied her initial burden of proof by demonstrating her inability to return to her former job as a teacher of handicapped students, and, as we have noted, the Secretary does not contend

that appellant could do so. The burden of proof therefore shifted to the Secretary to show that appellant, given her overall condition, nevertheless retained sufficient capacity to perform specific jobs existing in the national economy.

■ The ALJ, the Appeals Council, and the district court all appear to have found the Secretary to have met his burden of proof, and we recognize that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g) (Supp. IV 1980). This Court has defined substantial evidence as "such relevant evidence as a reasoning mind might accept as adequate to support a conclusion." *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir.1981). This oft-cited language is not, however, a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion. *See id.* at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

It may well be that an educated woman who can use her hands and arms, can lift up to ten pounds occasionally, and can sit, stand, or walk for two hours each in an

---

20 C.F.R. § 404.1567(a) (1982).

**3.** Although he did not deny that psychological factors had adversely affected appellant's condition, the ALJ concluded that, to a large extent, appellant's depression and anxiety stemmed from her physical condition and that

those problems would improve significantly if appellant increased her activities. The ALJ therefore reasoned that appellant's psychological problems could not be deemed a significant impediment to her returning to some sort of work activity.

eight-hour workday is capable of performing sedentary work. In the present case, however, the Secretary adduced *no* evidence that appellant was capable of doing so. Thus, the ALJ's conclusion that appellant could perform sedentary work was based solely on (1) his own amorphous impressions, gleaned from the record and from his evaluations of appellant's credibility, that appellant was a malingerer who, given her education, surely would be able to do sedentary work but for her malingering, and (2) appellant's failure to undergo surgery, which failure the ALJ viewed as another manifestation of her lack of good faith.[4] In other words, shorn of its rhetoric, the ALJ's conclusion that appellant is capable of engaging in sedentary activity is merely a function of the ALJ's own medical judgment. As such, his conclusion may not be permitted to stand, for we have pointed out time and again that these kinds of judgments are not within the ambit of the ALJ's expertise. *See, e.g., Gober v. Matthews,* 574 F.2d 772 (3d Cir.1978); *Schaaf v. Matthews,* 574 F.2d 157 (3d Cir.1978).

The ALJ's error is even more apparent in light of the evidence of appellant's psychological and orthopedic problems. Without even requesting an examination of appellant, the ALJ disregarded the highly relevant opinions of appellant's treating physicians and gave no basis for so doing.[5] This course of action is inconsistent with the ALJ's duty:

> This Court has recognized that there is a particularly acute need for some explanation by the ALJ when s/he has rejected relevant evidence or when there is conflicting probative evidence in the record.... [I]n *Kennedy v. Richardson,* 454

F.2d 376 (3d Cir.1972), we vacated and remanded the decision of the ALJ because it failed to afford an explanation why the ALJ rejected medical evidence that supported the claimant which was inconsistent with other medical evidence and the ALJ's findings.... In *Schaaf v. Matthews,* 574 F.2d 157 (3d Cir.1978), we held that it was error for an ALJ to reject uncontradicted medical evidence without a clear statement of the reasons for doing so.

*Cotter v. Harris, supra,* 642 F.2d at 706.

Moreover, this Court has also declared that "[t]estimony of subjective pain and inability to perform even light work is entitled to great weight, particularly when ... it is supported by competent medical evidence," *Dobrowolsky v. Califano,* 606 F.2d 403, 409 (3d Cir.1979), and that an ALJ's failure seriously to consider subjective evidence of pain can itself constitute grounds for reversal, *see Smith v. Califano,* 637 F.2d 968, 972 (3d Cir.1981). Here, however, the ALJ's dismissal of appellant's complaints of pain appears to have been solely a function of the ALJ's own credibility judgment and of appellant's failure to have visited her physicians more frequently. When we recall that appellant has been treated by some eight physicians, that she was taking heavy doses of prescribed medications, and that she was unemployed and hence had limited funds, it becomes evident that the considerations upon which the ALJ relied do not constitute a proper basis for rejecting appellant's complaints of pain, especially when we consider that her complaints were supported by medical testimony.

---

4. We are aware that the Secretary's regulations permit a claimant to decline surgery under certain limited circumstances. 20 C.F.R. § 404.-1530 (1982); *cf. Young v. Califano,* 633 F.2d 469 (6th Cir.1980) (refusal to submit to surgery for ruptured disc not disqualifying where surgery was not actually prescribed). The record in this case, however, does not contain information sufficient to enable the Secretary to determine whether the claimant might properly refuse to undergo surgery. If on remand the Secretary finds that appellant is disabled and that she would benefit from the surgery to

which she refuses to submit, the Secretary then must develop an adequate record to support denial of benefits on that basis.

5. While the ALJ is, of course, not bound to accept physicians' conclusions, he may not reject them unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected. *Cotter v. Harris, supra,* 642 F.2d at 705–06.

■ In short, the ALJ did not explain, except in the most conclusory terms and as a function of either his own credibility judgments or his own medical opinion, his rejection of appellant's medical evidence with respect to either her injuries or her complaints of pain. Nor did he set forth any reasoned basis for his opinion that appellant could perform sedentary work. Rather, the ALJ attempted to metamorphose his dismissal of appellant's evidence supporting disability into substantial evidence *contra*. We cannot second-guess the ALJ's credibility judgments, but they alone cannot carry the day. In view of the case law, we find it impossible to say that the ALJ's conclusory rejection of appellant's allegations and his determination that appellant could perform sedentary work meet the requirements of the substantial-evidence test. Under these circumstances, the grant of summary judgment for the Secretary must be reversed.

### IV. *Conclusion*

■ Although we believe that the ALJ's decision was not supported by substantial evidence, we do not believe that the record inexorably requires a grant of summary judgment for appellant.[6] What obviously gnawed at the ALJ was the failure of both appellant and her physicians seriously to explore the question of surgery—or even myelography—despite the prolonged duration of appellant's disabling symptoms. The ALJ apparently was also troubled by the prospect that this highly educated and intelligent young woman who was only thirty-three years old and possessed a master's degree in counseling could be rendered totally disabled by a back condition that was diagnosed by most physicians as nothing more than a "possible" herniated disc.[7] While these concerns are certainly an insufficient basis upon which to uphold the district court's grant of summary judgment for the Secretary, competent medical or vocational evidence might confirm the ALJ's judgment that, considering her intellect, education, and training, appellant could perform sedentary work, even given the limited capacities ascribed to her by Drs. Estrin and Adler.[8]

We therefore will reverse the judgment of the district court and remand the case to the Secretary for further hearings.

ADAMS, Circuit Judge, concurring in the judgment.

I agree that the order of the district court should be vacated and the matter remanded for further proceedings, although my reasons for this disposition differ from those of the majority.

The Secretary does not seem to have met his burden of showing that Kent has the capacity to perform sedentary work, but I am reluctant so to conclude without affording the Secretary an opportunity to explain with greater clarity the decision reached in this matter. The ALJ's explanation of his disposition is obscure, and "[i]t would be improper for us to speculate as to [his] reasoning process...." *Schaaf v. Mat-*

---

**6.** There is no record of appellant's having filed a cross-motion for summary judgment. That omission, however, would not be an obstacle to granting such relief in view of the law in this Circuit that summary judgment may be granted in favor of a litigant otherwise entitled thereto despite the absence of a specific cross-motion made pursuant to Fed.R.Civ.P. 56. *Viger v. Commercial Ins. Co.,* 707 F.2d 769 (3d Cir.1983) (nevertheless characterizing the filing of a cross-motion as the better practice); *see Golofski v. Califano,* 607 F.2d 1063, 1069 (3d Cir.1979).

**7.** The ALJ also suspected that appellant was malingering because she had sought a retirement pension from the Board of Education, but that suspicion hardly seems well-founded given appellant's much greater earning potential and her demonstrated history of motivation.

**8.** A finding of disability can be based on medical evidence alone or on some combination of medical and vocational considerations. Should the medical evidence here not prove dispositive, it therefore will be necessary for the ALJ to consider vocational factors. Only then will the grid regulations come into play, for the grids apply "in cases which cannot be evaluated on medical considerations alone." 20 C.F.R. § 404, App. 2, § 200.00 (1982). *Cf. Heckler v. Campbell,* —— U.S. ——, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983) (discussing grids and upholding their validity).

*thews,* 574 F.2d 157, 160 (3d Cir.1978). Out of an abundance of caution, therefore, I would vacate the district court's grant of summary judgment in favor of the Secretary, rather than reverse.[1]

1. The Secretary may consider it appropriate to take additional evidence. This is a matter best left to the discretion of the Secretary. *Cf. Cot-* *ter v. Harris,* 642 F.2d 700–707–08 (3d Cir. 1981).