John SCHONEWOLF, Plaintiff,

v.

John CALLAHAN[1], Acting Commissioner of the Social Security Administration, Defendant.

No. 96–CV–1950 (JBS).

United States District Court, D. New Jersey.

July 11, 1997.

As Amended Aug. 22, 1997.

1. Pursuant to Fed.R.Civ.P. 25(d)(1), John Callahan is substituted for Shirley Chater, the former Commissioner of Social Security, as defendant herein.

Robert A. Petruzzelli, Jocobs, Schwalbe & Petruzzelli, P.C., Cherry Hill, NJ, for Plaintiff.

Faith S. Hochberg, United States Attorney, by Peter G. O'Malley, Special Assistant United States Attorney, Newark, NJ, for Defendant.

## OPINION

SIMANDLE, District Judge.

This matter comes before this court pursuant to section 205(g) of the Social Security

Act ("Act"), as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying plaintiff's claim for Disability Insurance benefits under Title II and Supplemental Security Income ("SSI") benefits under Title XVI of the Act. The main issue to be decided is whether the Commissioner's decision that the plaintiff is "not disabled" within the meaning of the Act is supported by substantial evidence. For the reasons stated below, this court reverses the Commissioner's decision and awards benefits to plaintiff.

## I. *Background*

### A. *Procedural History*

Plaintiff, John Schonewolf, filed an initial application for Disability Insurance and SSI benefits on September 25, 1991, alleging an onset date of disability of July 5, 1991, due to a herniated disc and nerve damage in his legs and back. (R. 41–44, 46.) Mr. Schonewolf's application was denied both initially and on reconsideration. (R. 45–54, 62–71.)

On July 23, 1992, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. 74–75.) This hearing commenced on October 16, 1992, in Camden, New Jersey, before the Honorable Alan M. Neff, and plaintiff was represented by counsel. (R. 195–215.) In a written opinion dated March 24, 1993, ALJ Neff determined that Mr. Schonewolf was "not disabled" within the meaning of the Act and was therefore not entitled to benefits. (R. 13E–143.)

Plaintiff filed a timely request for review by the Appeals Council, and by order dated November 17, 1993, the Appeals Council remanded the case for further proceedings. (R. 144–46, 150–151.) Specifically, the Appeals Council directed the ALJ to (1) give further consideration to Mr. Schonewolf's residual functional capacity during the entire period of time at issue and provide rationale, with references to evidence of record, in support of the assessed limitations; (2) evaluate plaintiff's complaints of pain and provide rationale in accordance with the disability regulations pertaining to the evaluation of symptoms; and (3) obtain evidence from a vocational expert to clarify the effect of the assessed limitations on plaintiff's ability to work. (R. 151.) As will be discussed shortly, the ALJ failed to abide by these directions of the Appeals Council in any meaningful way.

More than seven months elapsed. The remand hearing was held on July 7, 1994, before ALJ Neff. (R. 171–194.) At this hearing, plaintiff was again represented by counsel, and a Vocational Expert ("V.E."), Gary Young, testified regarding occupational opportunities available to Mr. Schonewolf within the national economy. (*Id.*) In a second written opinion, rendered fourteen months after the second hearing, dated September 12, 1995, ALJ Neff again determined that the plaintiff was not disabled within the meaning of the Act and was not entitled to benefits. (R. 12–26.) ALJ Neff found, *inter alia,* that plaintiff was capable of performing some type of gainful work existing in the national economy. (R. 17, 18.) The ALJ's second opinion consumes three and one-half pages and largely incorporates the analysis and reasoning that the Appeals Council had found to be inadequate after the first hearing. (R. 15–18.)

Through counsel, Mr. Schonewolf requested that the Appeals Council again review the ALJ's decision. (R. 10–11.) This time, the Appeals Council denied the plaintiff's request for review by order dated March 15, 1996. (R. 3,4.) Thus, the ALJ's September 12, 1995, opinion became the final decision of the Commissioner.

On April 23, 1996, Mr. Schonewolf timely filed this action in the United States District Court, claiming that the Commissioner's finding that he is "not disabled" was not based on substantial evidence. Specifically, plaintiff claims that the ALJ improperly discounted Mr. Schonewolf's testimony of disabling pain and limitations and that the Commissioner failed to establish that alternative work existed for the plaintiff. (Pl. Br. at 19, 24.)

### B. *Personal and Medical History*

Mr. Schonewolf has held several manual labor jobs, including fork lift operator and metal slitter. (R. 17.) On July 5, 1991, he was working as a carpet installer when he

alleges to have fallen flat on his back while carrying a roll of carpet weighing approximately 200 pounds, which fell on top of him. (R. 108.) While he completed that day's work, the following day he could not get: out of bed due to pain in his lower back and left leg, and he has not returned to work since then. (*Id.*)

Mr. Schonewolf complains that he is dependent on his mother, with whom he resides, for his basic necessities—shopping, cooking, cleaning, driving—and that he lives in constant pain, unable to sit, stand or walk for more that thirty minutes at a time. (R. 91, 93.) Mr. Schonewolf also claims that he cannot stand for eight hours in a day because the back pain that he experiences afterward causes him to remain in bed for three to four days. (R. 203.) Further, Mr. Schonewolf claims that he does not think that he can alternate between sitting and standing for eight hours each day because his medication makes him drowsy. (R. 203.)

Ten days after his fall, Mr. Schonewolf visited Dr. Ronald Zweibaum, a chiropractor, who examined plaintiff, characterizing him as a "28–year–old moderately obese male, 6'3", 265 lbs." (R. 111.) Dr. Zweibaum referred Mr. Schonewolf to several physicians for examination and treatment. Ultimately, plaintiff was examined by six other doctors, including Dr. E.R. Nunez, Dr. Elizabeth M. Post, Dr. Martin Swiecicki, Dr. Armando Montiel and Dr. Karen Scardigli. A complete summary of the medical findings follows.

### 1. EMG and Nerve Conduction Study

On April 14, 1991, under Dr. Nunez's supervision, an EMG and nerve conduction study were obtained, showing acute partial enervation in the L3–S1 myotome, leading to the impression of an abnormal study and presence of acute L5 radiculopathy. (R. 99–101.) Dr. Felt concurred with the EMG findings (R. 104), as did Dr. Post (R. 108–109), Dr. Zweibaum (R. 106, 111–113), Dr. Nunez (R. 99, 130), Dr. Swiecicki (R. 132–133), and Dr. Scardigli (R. 162–163).

### 2. MRI Study

An MRI conducted on July 31, 1991, showed mild congenital spinal stenosis which was exacerbated by a central to left herniated disc at L4–5. (R. 102.) Dr. Felt concurred with these MRI findings (R. 104), as did Dr. Post (R. 108–109), Dr. Zweibaum (R. 106, 111–113), Dr. Nunez (R. 97–98), Dr. Swiecicki (R. 132–133), and Dr. Scardigli (R. 162–163), as discussed next.

### 3. Dr. Ronald Zweibaum, D.C.

Dr. Zweibaum completed a Physical Capacities Evaluation form on August 31, 1992, and filed two reports with the New Jersey Department of Labor ("NJDL"), dated October 24, 1991, and February 16, 1992, regarding Mr. Schonewolf's condition. (R. 106, 111, 124.) Both of the NJDL reports were based on Dr. Zweibaum's July 15, 1991, examination of plaintiff and his continuing treatment of plaintiff, as well as the MRI and EMG studies. (R. 106, 107, 111.) Dr. Zweibaum found, *inter alia*, that plaintiff had a "normal heel and toe gait, having increasing lower back pain on toe gait"; "tenderness on deep palpation over the left scapular region"; pain and tenderness over the lumbosacral regions and related musculature; limited flexion; and "equal and active deep tendon reflexes." (R. 106.) Dr. Zweibaum opined in the October 24, 1991, report that the plaintiff "continues to be disabled relative to the injury of 7/5/91. He is unable to stand or sit for long periods of time. All physical activities aggravate his condition." (R. 107.) In the February 26, 1992, report, Dr. Zweibaum concluded, based on continuing office visits and treatment through February 18, 1992, that Mr Schonewolf "is unable to perform any normal job activities[ ] which would include long periods of standing, sitting, walking, lifting, carrying or handling objects." (R. 112.)

### 4. Dr. E.R. Nunez, M.D.

Mr. Schonewolf was referred to Dr. Nunez, a board-certified physiatrist, by Dr. Zweibaum. Dr. Nunez first examined Mr. Schonewolf on August 7, 1991, and subsequently on August 14, 1991, and September 18, 1991. (R. 97, 99, 130.) On August 7, 1991, Dr.

Nunez found that the plaintiff was suffering from acute "sprain and strain of the myoligamentous supporting structures of the lumbosacral spines"; "low back pain with radicular symptoms of the left lower extremity"; "diffuse congenital spinal stenosis, presence of the central to left herniated disc of L4–5 increasing the spinal stenosis"; "myositis of the left periscapular musculatures"; and obesity. (R. 98.) Dr. Nunez recommended ongoing chiropractic treatment, and he commented that since plaintiff's job as a carpet installer requires heavy physical activity, plaintiff "may need ongoing work hardening and back strengthening exercises." (Id.)

After the September 18, 1991, examination, Dr. Nunez reported to Dr. Zweibaum that plaintiff "still showed pain and tenderness in the periscapular area as noted previously. There is also tenderness noted again over the lumbosacral spine and the related paraspinal muscles." (R. 130.) Dr. Nunez recommended that plaintiff continue chiropractic care, exercise regularly, and lose weight. (Id.) Dr. Nunez opined that Mr. Schonewolf would be unable to return to his job as a carpet installer and that his long-term prospects of recovery were undetermined as of the date of his latest examination. (R. 128, 129.)

### 5. Dr. M. Felt, M.D.

The next physician to examine Mr. Schonewolf was a neurologist, Dr. Felt, who examined plaintiff on September 4, 1991. (R. 104.) Dr. Felt found the plaintiff to be mentally alert and coherent, but suffering from a "post-traumatic cervical sprain"; a "post-traumatic reflex cephalalgia secondary to the cervical sprain"; a herniated disc in the lumbar region with signs and symptoms that suggested an L5 radiculopathy; tenderness to palpation of the left shoulder; weakness in the arms, hands and fingers; and spasms and tenderness in the lumbar region. (R. 105.) Dr. Felt also found that plaintiff had normal deep tendon reflexes and no sensory deficit. (Id.) Based on these findings, Dr. Felt recommended that Mr. Schonewolf consult an orthopedic or neurological surgeon. (Id.)

### 6. Dr. Elisabeth M. Post, M.D.

Mr. Schonewolf consulted a neurological surgeon, Dr. Post, on October 31, 1991, and again on December 23, 1991. (R. 108, 110.) Upon the initial examination, Dr. Post concluded that plaintiff suffered from a "degenerated disc at the L4–5 level with small herniation on the left." (Id.) She recommended a "strict course of bed rest, along with Robaxin and Darvocet." (R. 109.) Dr. Post also concluded that Mr. Schonewolf "may need surgery." (Id.) After the plaintiff's return visit on December 23, 1991, Dr. Post concluded that the bed rest "did not help" and that the plaintiff should lose forty to fifty pounds before an operation is considered.

### 7. Dr. Martin Swiecicki, M.D.

Dr. Zweibaum next referred Mr. Schonewolf to Dr. Swiecicki, a neurologist, who examined plaintiff on March 30, 1992. (R. 132.) Dr. Swiecicki found plaintiff to be suffering from L5 radiculopathy as well as a lumbar disc herniation at L4–5. (R. 133.) He noted that Mr. Schonewolf alleges that he is not able to exercise and that his weight increased from 220 pounds to 285 pounds after he injured his back on July 5, 1991. (Id.) He further noted evidence of weakness of the left foot. (Id.) Dr. Swiecicki concurred with Dr. Post that plaintiff is a candidate for surgical intervention, but that plaintiff must lose weight before surgery is considered. (Id.)

### 8. Dr. Armando Montiel, M.D.

Dr. Montiel examined Mr. Schonewolf on April 13, 1992, and concluded that Mr. Schonewolf's full range of motions was intact; that plaintiff was suffering from no limitations or restrictions; and that there was "no evidence of radiculopathy or any focal neurological deficits." (R. 116.) Dr. Montiel found that "palpation of the thoratic spine and paraspinal musculature revealed no evidence of pain or tenderness"; that the lumbar paraspinal musculature was "unremarkable"; that "backward extension, abduction, as well as adduction symmetrically were appreciated to be normal"; and that with the plaintiff standing, "flexion, extension and lat-

eral flexion of the lumbar region were noted to be normal." (R. 115.) Although Dr. Montiel mentioned the EMG testing, he noted that the results were "unavailable," so he did not consider them. (R. 115.) Likewise, Dr. Montiel makes no mention of the MRI test results. (*Id.*)

### 9. *Dr. Karen Scardigli, M.D.*

Finally, Mr. Schonewolf was examined by Dr. Scardigli, a neurologist, on June 21, 1995, in a consultation "set up by the ALJ after the Appeals Council [r]emand." (Pl. Br. at 23.) Dr. Scardigli observed that plaintiff was in "obvious distress with any particular moving as far as standing up or lying on the table." (R. 162.) Plaintiff weighed 348 pounds, had blood pressure of 140/92, and a pulse of 108. (*Id.*) Dr. Scardigli reviewed plaintiff's EMG report, which demonstrated "acute L5 radiculopathy" in her opinion. (R. 162.) Similarly, she reviewed his MRI which indicated an L4–5 herniated disc "located centrally and to the left." (R. 163.) Further, Dr. Scardigli found that plaintiff was suffering from a herniated disc at L4–5; that his cervical spine examination was unremarkable; that his lumbosacral spine examination revealed limited range of motion; that his mental status was normal; that "motor examinations revealed normal tone"; and that "deep tendon reflexes were +II and synmetrical throughout." (R. 163.)

With regard to Mr. Schonewolf's ability to work, Dr. Scardigli found that the plaintiff can only lift and carry objects weighing only six to ten pounds; that he can stand or walk two hours per day total, but only twenty minutes without interruption; that he can sit four hours per day total, but only twenty minutes without interruption; that he can never climb, balance, stoop, crouch, kneel or crawl; that his reaching, bending, pushing and pulling are "affected" by his impairment, but that his feeling, seeing, hearing, speaking, handling and fine manipulation are not; and that his impairment restricts him from moving machinery, but does not restrict him when it comes to dealing with heights, extreme temperatures, chemicals, dust, fumes, humidity or vibrations. (R. 165, 166.)

Dr. Scardigli concluded that Mr. Schonewolf is unable to work due to his herniated disc and that surgery is not possible because of his obesity. (R. 163.) She recommended that Mr. Schonewolf lose weight, particularly by swimming, but predicted that even such weight-loss and surgery would not restore his premorbid functioning. (*Id.*)

## II. *Discussion*

### A. *"Disability" Defined and Burdens of Proof*

The Social Security Act defines "disability" for purposes of plaintiff's entitlement to benefits as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). Under this definition, a claimant qualifies as disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated regulations for determining disability applicable to Disability Insurance and SSI cases. *See* 20 C.F.R. §§ 404.1501–404.1599 and apps. 1 & 2. Under these regulations, substantial gainful activity is defined as "work that—(a) involves doing significant and productive physical or mental duties; and (b) is done (or intended) for pay or profit." 20 C.F.R. § 404.1510. Importantly, this definition presupposes a regular, continuing, and sustained ability to perform such work. *Kangas v. Bowen,* 823 F.2d 775, 778 (3d Cir.1987).

The Commissioner has promulgated regulations that determine disability by application of a five-step sequential analysis codified in 20 C.F.R. § 404.1520. The Commissioner

evaluates each case, step-by-step, until a finding of "disabled" or "not disabled" is obtained. 20 C.F.R. § 404.1520(a). This five step process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4. If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education and past work experience to determine whether or not he is capable of performing other work which exists in the national economy. If he is incapable, a finding of disability will be entered. On the other hand, if the claimant can perform other work, he will be found not to be disabled.

20 C.F.R. § 404.1520(b)–(f) (1997).

This analysis involves a shifting burden of proof. *Wallace v. Secretary of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence. In the final step, however, the Commissioner bears the burden of proving that work is available for the petitioner: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." *Kangas*, 823 F.2d at 777; *see Olsen v. Schweiker*, 703 F.2d 751, 753 (3d Cir.1983).

## B. *Standard of Review*

■ A reviewing court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir.1992), cert. denied, 507 U.S. 924, 113 S.Ct. 1294, 122 L.Ed.2d 685 (1993); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir.1988); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir.1986); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir.1985). "Substantial evidence" means more than "a mere scintilla." It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The inquiry is not whether the reviewing court would have made the same determination, but, rather, whether the Commissioner's conclusion was reasonable. *See Brown*, 845 F.2d at 1213. Thus, substantial evidence may be slightly less than a preponderance. *Hanusiewicz v. Bowen*, 678 F.Supp. 474, 476 (D.N.J.1988).

■ The reviewing court, however, does have a duty to review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir.1984). As a part of this review, "a court must 'take into account whatever in the record fairly detracts from its weight.'" *Willbanks v. Secretary of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir.1988) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951)). The Commissioner has a corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F.Supp. 273, 278 (M.D.Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir.1986)). As the Third Circuit has held, access to the Commissioner's reasoning is indeed essential to a meaningful court review:

Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence ap-

proaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir.1978). Nevertheless, the District Court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182.

■ Some types of evidence will not be "substantial." For example,

[a]single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g. that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.

*Wallace*, 722 F.2d at 1153 (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983)).

■ The Third Circuit recently restated its long held position that "[a] court considering a claim for disability benefits must give greater weight to the findings of a treating physician." *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir.1993); *see Kane v. Heckler*, 776 F.2d 1130, 1135 (3d Cir.1985). This is particularly true " 'when the opinion reflects an expert judgement based on a continuing observation of the patient's condition over a prolonged period of time.' " *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987) (quoting *Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir.1984)).

■ The Third Circuit has also held that the ALJ cannot reject a treating physician's testimony in the absence of contradictory medical evidence. *See Jones v. Sullivan*, 954 F.2d 125, 128–129 (3d Cir.1991); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Rossi v. Califano*, 602 F.2d 55, 58 (3d Cir.1979). However, an ALJ can reject the opinion of a treating physician if he or she explains on the record the reasons for doing so. *See Allen v. Bowen*, 881 F.2d 37, 41 (3d Cir.1989); *Brewster*, 786 F.2d at 585. Moreover, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived

at her decision by application of the proper legal standards. *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir.1983); *Curtin v. Harris*, 508 F.Supp. 791, 793 (D.N.J.1981).

### III. *Analysis*

Plaintiff challenges the Commissioner's final decision denying him SSI and Disability Insurance benefits by claiming that the ALJ's September 12, 1995, decision was not supported by substantial evidence. Specifically, plaintiff argues that the ALJ erred in two instances. First, plaintiff argues that the ALJ improperly discounted Mr. Schonewolf's testimony of disabling pain which was corroborated by Dr. Scardigli's uncontradicted medical findings. (Pl. Br. at 19.) Second, plaintiff contends that, at step five of the sequential analysis, ALJ Neff relied on flawed V.E. testimony in concluding that plaintiff is able to perform some types of work available in the national economy. Here, plaintiff argues that the ALJ's hypothetical questions to the V.E. misrepresented Mr. Schonewolf's actual condition, and thus the V.E.'s testimony is not representative of Mr. Schonewolf's actual ability to work. (Pl. Br. at 24.)

For the following reasons, this court holds that the ALJ's determination was not based on substantial evidence. Indeed, any notion that this man can perform gainful employment is overwhelmed by medical evidence to the contrary. *See Wallace*, 722 F.2d at 1153. Because substantial evidence in this fully developed record indicates that plaintiff is disabled within the meaning of the Act, the Commissioner's final decision is reversed.

### A. *THE ALJ SHOULD HAVE GIVEN MORE PROBATIVE WEIGHT TO PLAINTIFF'S TESTIMONY OF PAIN AND THE COPIOUS CORROBORATING MEDICAL EVIDENCE.*

■ Plaintiff's first argument is that Mr. Schonewolf's subjective testimony of disabling pain should have been seriously considered by ALJ Neff, instead of being discounted. (Pl. Br. at 19.) Plaintiff asserts that Mr. Schonewolf's testimony should have been given "great weight" because it is corroborated by competent medical evidence. *Kent v.*

*Schweiker*, 710 F.2d 110 (3d Cir.1983). He asserts that the ALJ may not render a medical analysis contrary to the physicians' findings, or make speculative inferences from medical reports. *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981). Moreover, plaintiff asserts that the ALJ's conclusions are not specific findings supported by medical evidence. *Williams v. Sullivan*, 970 F.2d 1178, 1184–85 (3d Cir.1992); *see Hargenrader v. Califano*, 575 F.2d 434 (3d Cir.1978). Rather, plaintiff contends, the ALJ's conclusions are speculative inferences from the medical records and inappropriately discount Mr. Schonewolf's testimony of disabling pain. (Pl. Br. at 19.)

In support of these contentions, plaintiff predominantly relies on the medical findings of Dr. Scardigli, who concluded that plaintiff is unable to work. (Pl. Br. at 22.) Plaintiff contends that Dr. Scardigli's medical findings are consistent with plaintiff's testimony of pain [2] and with the findings of Dr. Nunez and Dr. Zweibaum. (Pl. Br. at 23.) Plaintiff further contends that no substantive evidence contradicts these medical findings and that ALJ Neff's decision that it does constitutes a "slanted" speculative inference. (Pl. Br. at 22–23.)

 Even though it is up to the ALJ, not the plaintiff, to decide whether a plaintiff's subjective testimony of pain is credible in light of medical evidence, the ALJ must explain the reasons for his decision. *Brewster*, 786 F.2d at 581. Where the "[Commissioner] is faced ·with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Willbanks*, 847 F.2d at 303. Moreover, the ALJ may not reject a treating physician's testimony, in this case Dr. Zweibaum's testimony, unless he explains on the record the reasons for going so. *Allen*, 881 F.2d at 41. It is almost impossible for this court to determine whether the ALJ based his decision on substantial evidence if the ALJ does not explain the reasons for his decision because according to *Gober*, 574 F.2d at 776:

Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

In this case, the ALJ's superficial treatment of the medical findings has impeded this court's ability to determine whether the conclusions reached by the ALJ are rational. Though it is not this court's duty to reweigh the evidence, *Williams*, 970 F.2d at 1182, it is its duty to review all of the evidence. *Daring*, 727 F.2d at 70. After such a review, it is this court's opinion that the ALJ did not adequately explain why certain medical evidence, particularly the findings of Dr. Zweibaum, Dr. Scardigli, Dr. Nunez, Dr. Post, Dr. Felt and Dr. Swiecicki, which support plaintiff's testimony, was not deserving of more probative weight. Because the ALJ does not adequately explain why he does not give more probative weight to all these credible medical findings, which span a broad period of time and a spectrum of medical specializations, and consequently to plaintiff's testimony of pain, this court holds that the ALJ's decision was not based on substantial evidence.

 Dr. Zweibaum opined that plaintiff is "unable to stand or sit for long periods of time" and that "[a]ll physical activities aggravate his condition." (R. 107.) Though Dr. Zweibaum is the treating chiropractor in this case, his medical findings were never discussed in ALJ Neff's September 12, 1995, opinion. This silence is inadequate as a "court considering a claim for disability benefits must give greater weight to the findings of a treating physician." *Mason*, 994 F.2d at 1067; *see Kane*, 776 F.2d at 1135. Where the claimant's primary treatment is rendered by a chiropractor in consultation with neurologists, orthopedics and physiatrists, the opinions of the chiropractor are entitled to deference if derived from personal observation

---

**2.** The subjective testimony of pain to which plaintiff refers is summarized on page 281, *su-* *pra*, under "Medical and Personal History."

and the medical opinions of the consultants. 20 C.F.R. § 404.1527(d).[3]

Overlooking the record of Dr. Zweibaum's treatment of plaintiff is especially improper here since the Appeals Council remanded ALJ Neff's March 24, 1993, opinion because of his failure to provide rationale, with reference to medical evidence, as to why plaintiff's complaints were not given more probative weight. (R. 151.) The ALJ cannot reject Dr. Zweibaum's testimony in the absence of contradictory medical evidence. *See Jones,* 954 F.2d at 128–29; *Frankenfield,* 861 F.2d at 408; *Rossi,* 602 F.2d at 58. This court cannot imagine how Dr. Zweibaum's findings can be contradicted when they are not even discussed.

Though Dr. Scardigli's findings were discussed in the ALJ's second opinion, this court agrees with plaintiff that there exists no adequate explanation why the ALJ found her medical conclusions unreliable. Dr. Scardigli, the last physician to examine plaintiff, saw Mr. Schonewolf in a consultation arranged by the Appeals Council after the November 17, 1993, remand. (Pl. Br. at 23.) She found that plaintiff was in "obvious distress with any particular moving" and that his lumbosacral spine, where plaintiff's herniated disc is located, had limited motion. (R. 162–163.) As the ALJ notes in his opinion, Dr. Scardigli found that plaintiff could not lift more than ten pounds, walk for more than two hours per day or sit for more than four hours per day. (R. at 16.) Yet, ALJ Neff did not note Dr. Scardigli's finding in the same report that plaintiff could not walk, sit or stand for more than 20 minutes at a time. (R. 162–163.) After discussing these and other findings by Dr. Scardigli, the ALJ sweepingly concluded:

In reviewing the record in its entirely, we find that the opinion of Dr. Scardigli that Mr. Schonewolf was unable to work is in-

consistent with her narrative and clinical findings.

(R. 16.) This is hardly an explanation as to why Dr. Scardigli's opinion is unreliable, as the ALJ never even attempts to explain why Dr. Scardigli's conclusions are inconsistent with her own findings. The ALJ has no basis for concluding that his interpretation of Dr. Scardigli's findings is valid while her own conclusions are unreliable; or if he has such a basis, he never discusses it in his opinion. The ALJ, therefore, invalidly substitutes his medical conclusions for those of the physician. *Kent,* 710 F.2d at 115 (holding that an ALJ's own medical analysis which is contrary to medical evidence is invalid).

The ALJ's dismissal of Dr. Scardigli's opinion cannot be considered "substantial evidence" because there must exist medical evidence to disprove a claimant's testimony of pain. Dr. Scardigli's opinion must be found to support plaintiff's testimony, unless the ALJ explains how it is discredited by conflicting medical evidence. *Willbanks,* 847 F.2d at 301. Having examined the entire record, this court finds that the available evidence corroborates Dr. Scardigli, and does not contradict her opinion. The ALJ's sweeping conclusions, or mere conclusions, are not relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson,* 402 U.S. at 401, 91 S.Ct. at 1427.

 The ALJ further ignores the objective medical testing, relied upon by all doctors in this case except the consultant, Dr. Montiel, consisting of the EMG study and the MRI, which document the radiculopathy at L–5 and the herniated disc at L4–5. These objective medical findings are consistent with plaintiff's ongoing subjective complains of pain and not reconcilable with the ALJ's

3. 20 C.F.R. § 404.1527(d)(2) provides the following about how medical opinions are weighed: Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained form the objective medical findings alone of from the reports of

individual examiners, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. . . .

findings. Complaints or pain are to be credited, not disregarded, when they are supported by evidence of medical impairments. *See Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir.1985) (noting that a claimant's "subjective complaints of pain ... should have been credited since they are supported by ... evidence of medical impairments"); *see also Kent,* 710 F.2d at 110; *Allen,* 881 F.2d at 37; *Smith,* 637 F.2d at 968; *supra.*

Moreover, beyond Dr. Zweibaum and Dr. Scardigli, every physician who has examined Mr. Schonewolf, with the exception of Dr. Montiel, has documented and credified his complaints of pain, as discussed under Personal and Medical History, *supra.* These physicians are specialists in their fields: Dr. Scardigli is a neurologist, Dr. Nunez is a board-certified physiatrist, Dr. Felt is a neurologist, Dr. Post is a neurosurgeon, and Dr. Swiecicki is a neurologist. ALJ Neff's findings, however, nowhere discuss the evidence provided by these experts, with the exception of Dr. Scardigli, nor the EMG study and MRI report. (R. 15–18.) For that matter, the ALJ does not mention the only conceivable medical opinion supporting his opinion— Dr. Montiel's report based upon a one-time examination without the benefit of reviewing the MRI or EMG test results. (R. 114–118).

The ALJ's earlier discussions of medical evidence in his March 24, 1993, decision (R. 139–143), which was found by the Appeals Council to be inadequate (R. 150–151), was nonetheless reincorporated into his September 12, 1995, decision by reference (R. 15), without any further discussion or consideration being given. If the ALJ's consideration of plaintiff's complaints of disabling pain was inadequate the first time because it was inconsistent with the governing regulations at 20 C.F.R. §§ 404.1529 and 416.929,

as found by the Appeals Council (R. 151), its incorporation by reference without reconsideration and discussion does not comport with law.

It cannot be reasonably concluded that ALJ Neff relied on more than a "mere scintilla" of evidence in finding plaintiff "not disabled." *Richardson,* 402 U.S. at 401, 91 S.Ct. at 1427. However, it may be fairly concluded that the ALJ's findings are "overwhelmed by other evidence," *Wallace,* 722 F.2d at 1153, and that plaintiff's testimony as well the medical evidence corroborating it should have been given more probative weight by the ALJ.

B. *THE ALJ DID NOT RELY ON SUBSTANTIAL EVIDENCE IN ESTABLISHING THAT ALTERNATIVE WORK IS AVAILABLE FOR MR. SCHONEWOLF.*

■ Plaintiff also challenges the ALJ's determination at step five that Mr. Schonewolf can perform some type of work that exists in the national economy. (Pl. Br. at 24.) Plaintiff claims that the V.E.'s opinion that Mr. Schonewolf can work "inspection-type jobs," such as the job of a dowel inspector, should not be relied upon because the V.E. answers were in response to the ALJ's hypotheticals which misrepresented plaintiff's actual condition. (R. 186, 187.)

Specifically, plaintiff argues that the ALJ, in posing questions to the V.E., improperly assumed that Mr. Schonewolf can perform "sedentary work," as defined in 20 C.F.R. § 404.1567 and Social Security Ruling ("SSR") 83–10.[4] (Pl.Br.27–28.) Such work, which includes inspection-type jobs, cannot be performed by Mr. Schonewolf, according to plaintiff, because Mr. Schonewolf cannot sit, stand or walk for the amount of time

4. Under Section 20 C.F.R. 404.1567, the Commissioner defines "sedentary work" to, in relevant part, include: "jobs which involve lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

Social Security Ruling 83–10 defines "occasionally" as "from very little up to one third of the time. Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about two hours of an eight-hour work day, and sitting should generally total approximately six hours of an eight-hour work day. Work process in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles." SSR 83–10.

required to perform sedentary work. Plaintiff again relies on Dr. Scardigli's medical findings to support the assertion that Mr. Schonewolf cannot meet the basic sitting, standing and walking requirements for sedentary work. (Pl. Br. at 27–28.) Plaintiff concludes that since the V.E.'s job suggestions assumed capabilities greater than those possessed by Mr. Schonewolf, the Commissioner's final decision is not based on substantial evidence. (*Id.*)

Again, this court regrets it is necessary to note that the ALJ, upon rehearing, failed to follow the Appeals Council's mandate pertaining to vocational expert testimony and ability to perform sedentary work. (R. 150–151.) In addition to requiring the ALJ to evaluate claimant's complaints of pain as discussed above, the Appeals Council directed the ALJ upon remand to do the following:

> Give further consideration to the claimant's residual functioning capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of the assessed limitations (Social Security Ruling 86–8). In so doing, evaluate the treating source opinions in accordance with the provisions of 20 C.F.R. [§] 404.927.
>
> . . . .
>
> Obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83–12). In so doing, the Administrative Law Judge must ensure that the hypothetical questions reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge must also make a specific finding on the claimant's educational level.

(R. 151.) The ALJ's review of the evidence regarding the claimant's "residual functioning capacity" was inadequate, and the hypothetical questions posed to the V.E. did not "reflect the specific capacity/limitations established by the record as a whole," as required upon the remand. (R. 151.)

■ A "vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the questions accurately portray the claimant's individual physical and mental limitations." *Podedworny*, 745 F.2d at 210. If there exists substantial evidence supporting the claimant's condition as portrayed by the ALJ, then the ALJ may rely on V.E. testimony about a person in such a condition. *Dumas v. Schweiker*, 712 F.2d 1545 (2nd Cir.1983).

In this case, the V.E. testimony may not be considered because the ALJ did not rely on substantial evidence in ascertaining plaintiff's actual condition. The V.E.'s opinion that plaintiff can perform certain jobs is not reliable precisely for the reasons discussed in part III(A), *supra:* because the ALJ had no basis for concluding what truly is plaintiff's condition. In discounting the Appeals Council's mandate, the ALJ provided no substantial evidence or rationale for his conclusion that plaintiff can perform sedentary work. Not only did the ALJ discount copious credible medical "evidence of record in support of assessed limitations," but he also made no reference at all to plaintiffs residual functioning capacity, or ability to perform alternative work, as this capacity changed or persisted "during the entire time at issue." (R. 150–151.) Any V.E. testimony at step five, therefore, is a consequence of the ALJ's findings which are not based on substantial evidence.

■ In concluding that the V.E.'s testimony is unreliable, this court also notes that the ALJ's hypothetical questions at the July 7, 1994, remand hearing were imprecise and potentially misleading. At the July 1994 remand hearing, for example, the ALJ asked the V.E. to assume that plaintiff can perform "sedentary and/or light work." (R. 185–186.) "Sedentary" work is distinguished, *inter alia*, from "light work" because it involves "lifting no more than 10 pounds" whereas "light" work involves "lifting no more than 20 pounds." 20 C.F.R. § 404.1567(a), (b) 1997. Phrasing the question "sedentary and/or light work" may have misled the V.E. into thinking that Mr. Schonewolf can lift objects weighing twenty pounds, whereas Dr. Scardigli and Dr. Nunez found that plaintiff can lift no more than ten pounds. (R. 127, 164.) Even if the ALJ had established by substan-

tial evidence that plaintiff can lift up to ten pounds, and meet the other requirements for sedentary work, the V.E. testimony would be unreliable because of the imprecision of the ALJ's hypothetical questions. In posing this question, the ALJ surely did not "ensure that the hypothetical questions reflect the specific capacity/limitations established by the record as a whole." (R. 150–151.)

## C. *THE APPROPRIATE REMEDY HERE IS REVERSAL AND AWARD OF BENEFITS.*

■ Upon review of the entire record, the reviewing court "shall have power to enter ... a judgement affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing a case and awarding benefits to a claimant, the reviewing court must establish that the administrative record of the case has been fully developed and that substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits. *Podedworny*, 745 F.2d at 221–223. When "further administrative proceedings would simply prolong [the claimant's] waiting and delay his ultimate receipt of benefits, reversal is especially appropriate." (*Id.* at 223.) These principles have been consistently reaffirmed by the Third Circuit. *See e.g. Woody v. Secretary of Health & Human Servs.*, 859 F.2d 1156, 1162–1163 (3d Cir. 1988); *Gilliland v. Heckler*, 786 F.2d 178, 184–185 (3d Cir.1986); *Caffee v. Schweiker*, 752 F.2d 63, 68 (3d Cir.1985).

■ This case is ripe for reversal. The administrative record is fully developed: Mr. Schonewolf has been examined by no less than seven doctors, all of whom are specialists; he has had two hearings before an Administrative Law Judge and two appeals within the Social Security Administration; he has given his testimony on several occasions, and to this court's best knowledge he has fully cooperated in providing the ALJ with all the necessary documents for the comprehensive analysis of this case to which the law entitles him.

The result of this cooperation, unfortunately, has been not only a superficial analysis by the ALJ but also an erroneous one. In this court's opinion, there exists more than "substantial evidence on the record as a whole indicat[ing] that [plaintiff] is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221–222. Indeed, there is overwhelming evidence of disability and a remand for a third hearing is not necessary.

The evidence that plaintiff met the first four steps of the sequential analysis is substantial and uncontested. Mr. Schonewolf is not currently engaged in substantially gainful employment; he suffers from a severe impairment; his impairment does not meet or equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; and he cannot perform any past relevant work. (R. 17–18.)

At step five, however, the government does not meet its burden. The government must prove that a claimant can perform some work that exists in the national economy. *Wallace*, 722 F.2d at 1153. If the claimant is incapable, a finding of disability will be entered. 20 C.F.R. § 404.1520(f) (1997). There exists substantial evidence in the record to indicate plaintiff cannot even perform sedentary work, the least physically demanding type of work that a person may perform according to the C.F.R.'s.

Sedentary work involves lifting no more than ten pounds and sitting most of the time (approximately six hours), although standing or walking is sometimes required up to one third of each work day (generally about two hours).[5] (SSR 83–10.) ALJ Neff concluded that plaintiff can perform this type of work, and as his questions to V.E. Young at the July 7, 1994, rehearing indicate the ALJ concluded that plaintiff can perhaps also perform some "light" work. Yet, the medical evidence in this case indicates that Mr. Schonewolf *cannot* perform sedentary work, as Mr. Schonewolf cannot sit for the amount of time necessary for sedentary work. The three doctors who commented on plaintiff's capacity to lift, sit, stand and walk—these are doctors Zweibaum, Nunez and Scardig-

---

**5.** See footnote four for a full definition.

li—concluded that plaintiff can lift only up to ten pounds. (R. At 124, 127, 164.) These same doctors, however, concluded that plaintiff could not sit the requisite time necessary for sedentary work: Dr. Zweibaum found that plaintiff could sit for less than one hour for each eight hour work day, while Dr. Nunez concluded that plaintiff could sit for two hours, and Dr. Scardigli concluded that plaintiff could sit for four hours, but no longer than twenty minutes uninterrupted for each work day. (*Id.*) Since sedentary work involves sitting for at least two-thirds of each work day, or approximately six hours according to SSR 83–10, plaintiff is not capable of performing this type of work. Under the most favorable diagnosis, Mr. Schonewolf can sit only for up to four hours per work day, and there exists no medical evidence indicating that he can sit any longer than that. Plaintiff's own testimony is consistent with the medical findings, and as discussed under Section III(A), the ALJ produced no evidence contradicting this fact. It is therefore apparent that plaintiff is incapable of performing sedentary work and that the government did not meet its burden of proving that alternative work exists for plaintiff.

Any further proceedings on this matter would simply prolong plaintiff's waiting and delay his ultimate receipt of benefits. *See Podedworny,* 745 F.2d at 223. Specifically, there are two factors that compel this court to reverse this case. First, plaintiff has been waiting for close to six years since his initial application for the benefits to which he is entitled under the Act. Second, plaintiff should not have to endure more unnecessary delay. After the November 17, 1993, remand it took the ALJ almost two years to conduct a rehearing and render a second opinion. The ALJ's determination following the second hearing failed to address the matters mandated by the Appeals Council's remand after the first hearing. Even though this court has faith that such an extensive delay would not follow a second remand, and even though the Commissioner could conceivably reassign this matter for another hearing before a different ALJ, any delay at all is unnecessary here because plaintiff is disabled within the meaning of the Act and therefore entitled to benefits without further administrative consideration.

## IV. *Conclusion*

For the reasons discussed, this court holds 1) that the Commissioner's determination that Mr. Schonewolf is not disabled within the meaning of the Act is not supported by substantial evidence and 2) that Mr. Schonewolf is in fact disabled. Thus, this court reverses the Commissioner's final decision that Mr. Schonewolf is not entitled to Disability Insurance or SSI benefits and orders that plaintiff be awarded these benefits reflecting an onset date of July 5, 1991.

The accompanying Order is entered.

## *ORDER*

This matter having come before the court upon plaintiff John Schonewolf's application to review the final decision of the Commissioner of the Social security Administration denying plaintiff's application for Supplemental Security Income under Title XVI and Disability Insurance benefits under Title II of the Social Security Act; and this court having considered the entire record and all submissions on behalf of the parties; and for the reasons stated in the Opinion of today's date; and for good cause shown;

it is this 11th day of July, 1997, hereby ORDERED that upon plaintiff's appeal, the final decision of the Commissioner be, and hereby is, *REVERSED* and the Commissioner shall award benefits to plaintiff reflecting an onset date of July 5, 1991.