

Opinions of the United
States Court of Appeals
for the Third Circuit

6-22-2004

# Thimou v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4780

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Thimou v. Comm Social Security" (2004). *2004 Decisions.* Paper 586.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/586

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-4780
_____

PATRICIA THIMOU
*Appellant*
v.

COMMISSIONER OF SOCIAL SECURITY

_____

On Appeal From the United States District Court
For the District of New Jersey
(D.C. No. 02-cv-00149)
District Judge: Honorable Mary Little Cooper
_____

Submitted Under Third Circuit LAR 34.1(a)
June 15, 2004
Before: ALITO, SMITH and BECKER, *Circuit Judges*

(Filed: June 22, 2004)
_____

OPINION
_____

BECKER, *Circuit Judge.*

Patricia Thimou appeals from an order of the District Court granting summary

judgment in favor of the defendant, Commissioner of Social Security, on Thimou's claim

for disability benefits. Rejecting plaintiff's contentions to the contrary, the District Court

concluded that the Administrative Law Judge ("ALJ") properly explained the bases for his findings at steps three and four of the Commissioner's sequential evaluation process, and that substantial evidence supported the ALJ's decision that Thimou was not disabled within the meaning of the Act. We affirm. Because the parties are fully familiar with the background facts and procedural history we need not set them forth, and limit our discussion largely to our *ratio decidendi.*

The brief of plaintiff's counsel, who is well versed in the Social Security Act jurisprudence of this Court, is suffused with quotations from some of our leading cases,[1] which set forth the burdens we have imposed on Social Security ALJ's to clearly articulate and document their findings. We take these cases seriously, of course, but find that, in this case, the ALJ's stewardship passes muster.

The principal focus of Thimou's attack on the ALJ's decision relates to his rejection of the contention that Thimou's condition meets the criteria of the listed impairments. Thimou scores the ALJ's finding that

> The claimant has no impairment which meets or equals in severity the criteria of any of the listed impairments described in Appendix 1 of the Regulations (20 CFR Part 404, Subpart P, Appendix 1). No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairments (Decision, pg. 2, Tr. 15).

with the barb:

> To which listed impairment did the ALJ make such a comparison? The

---

[1] *E.g. Cotter v. Harris*, 642 F.2d 700 (3d Cir. 1981); *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983); *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112 (3d Cir. 2000).

Listing of Impairments in Appendix 1 consists of 14 chapters, over 120 separate listed impairments and even more subchapters within individual listings, each affording a different disease process, the equivalent of any one of which would authorize presumptive disability. To which of these chapters, paragraphs and subparagraphs and to which of these separate disease processes did the ALJ compare appellant's impairments? The ALJ did not identify the specific listing of [sic] group of listings he utilized for comparison. The ALJ made no comparison. The ALJ did not discuss the medical equivalence in any manner whatsoever and certainly did not identify which elements were missing from which criteria of which listing. This conclusory statement cannot be the subject of any meaningful judicial review by this Court or any other Court since no Court can honestly discern the basis for the ALJ's finding at step three of the sequential evaluation. The ALJ's analysis at step three is almost a word-for-word copy of the exact analysis rejected by this Court in the *Burnett* holding.

This contention, however, is mistaken, for the ALJ discussed in detail the critical testimony bearing on Thimou's listings claim, i.e., the testimony of plaintiff's medical expert, Dr. Albert G. Mylod. In fact, the ALJ devoted numerous paragraphs of his report to an analysis of Dr. Mylod's testimony and the records of the Overlook and Union hospitals chronicling Thimou's numerous visits and the condition of her knee at the time of those visits. The ALJ accorded the testimony of Dr. Mylod "little weight," pointing out that, notwithstanding Dr. Mylod's declaration that Thimou "equalled" listings 1.02 and 1.03 at various times, there were missing components of the listings at each time which Dr. Mylod was either unable to supply, or supplied by transporting the later findings of Dr. Nadel, beyond the covered period, backwards into that period. In short, the rejection of Mylod's testimony was reasoned, and the ALJ's findings on the listings are supported by substantial evidence.

3

There is no doubt that Thimou had, at times relevant, physical limitations, primarily due to her knee problems.[2] Notwithstanding this, the ALJ concluded that Thimou possessed the residual functional capacity ("RFC") to perform sedentary work. Although Thimou criticizes the adequacy of the ALJ's RFC analysis under our case law, *see supra* n.1, again we are satisfied that the ALJ's discussion contains the requisite amount of detail to permit us to determine whether the evidence was properly considered, and that it passes muster.

The ALJ based his conclusion that Thimou could perform sedentary work on the medical evidence in the record, including treatment notes from Overlook Hospital and Dr. Mylod's testimony, as well as Thimou's testimony. In this regard, treatment notes from Overlook Hospital during the period prior to August 1997 demonstrate no significantly abnormal clinical findings related to Thimou's knees, and particularly that she had no inflammation or swelling of her knees. The ALJ also considered Thimou's own testimony, and in light of the entire record, concluded that Thimou had the RFC of performing her prior job as a secretary. We are satisfied that this finding was supported by substantial evidence.

The judgment of the District Court will be affirmed.

---

[2] Although Thimou had other serious ailments including a (repaired) aneurysm and a sometime seizure disorder, and also problems with her hands and an abnormal EKG, there was no evidence that these were disabling.

4