Marisol MORENO, on behalf
of Maricelis Moreno,
Appellant

v.

COMMISSIONER OF SOCIAL
SECURITY, Appellee.

No. 05–4771.

United States Court of Appeals,
Third Circuit.

Argued Sept. 12, 2006.

Filed: Sept. 29, 2006.

Abraham S. Alter, Esq. (Argued), Rahway, NJ, for Appellant.

Karla J. Gwinn, Esq. (Argued), Social Security Administration, Office of General Counsel, Region II, New York, NY, for Appellee.

Before: FUENTES, FISHER, and BRIGHT,* Circuit Judges.

* The Honorable Myron H. Bright, Senior Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

## OPINION OF THE COURT

FUENTES, Circuit Judge.

Marisol Moreno ("Moreno") brings this appeal on behalf of her minor daughter Maricelis Moreno ("Maricelis"). Moreno appeals a final decision of the District Court that affirmed the decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied Moreno's application for Child's Supplemental Security Income ("SSI") benefits. We will affirm the District Court.

### I.

This Court exercises jurisdiction over the District Court's grant of summary judgment under 28 U.S.C. § 1291. The appellate court employs a substantial evidence standard to review a Commissioner's final denial of benefits. *See* 42 U.S.C. § 405(g). "[T]he existence [or absence] of substantial evidence is not merely a quantitative exercise.... Nor is evidence substantial if it is overwhelmed by other evidence-particularly certain types of evidence (e.g., that offered by treating physicians)-or if it really constitutes not evidence but mere conclusion." *Id.* at 317 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983)). A court cannot adequately review an administrative decision if an ALJ fails to provide "not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). Otherwise, the court has no way of knowing whether probative evidence was not credited or simply ignored. *Id.*

### II.

For a child under the age of eighteen (18) to be considered disabled and eligible for SSI under the Social Security Act, she must have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner applies a three-part sequential analysis to evaluate whether a child is disabled and eligible for SSI. First, if the child is doing substantial gainful activity, the Commissioner will determine that the child is not disabled. 20 C.F.R. § 416.924(a). Second, if the child is not working, the Commissioner will determine whether the child's impairment is severe. *Id.* Third, if the impairment is severe, the Commissioner must determine whether the impairment "meets, medically equals, or functionally equals the listings." *Id.*

*Medical Equivalence:* To qualify as disabled based on asthma, an applicant must meet the requirement for continuing signs and symptoms despite a regimen of prescribed treatment: Specifically, the applicant may qualify if she shows that she has suffered from "[a]ttacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 103.03B ("[A]n evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks."). According to Listing § 3.00C, "[a]ttacks of asthma, ... are defined as prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00C.

*Functional Equivalence:* To determine whether an impairment is functionally equivalent to a listing the Commissioner must determine that the impairment results in a "marked" limitation in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The domains which the Commissioner is to analyze are: 1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for oneself; and 6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). A marked limitation is present where the impairment interferes "seriously" with one's ability to "independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An extreme limitation is present where one's impairment interferes "very seriously" with one's ability to "independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a (e)(3)(i).

### III.

The ALJ's analysis of Moreno's claim followed the three-step sequence proscribed by 20 C.F.R. § 416.924(a). Moreno challenges the ALJ's step-three finding of no medically-equivalent impairment. Moreno alleges that Maricelis suffered at least six (6) asthma attacks in one year, seven (7), if the Court considers the 368 day period between March 2002 through the end of March 2003. Therefore, Moreno alleges, Maricelis's asthma is the medical equivalent of a listed impairment, under § 103.03B.App. Br. at 13. Moreno alleges that the ALJ failed to mention all but three of Maricelis's asthma attacks in his step-three analysis, and that this oversight was a "deliberate *Cotter* violation." *See* App. Br. at 13. Moreno also argues that the ALJ's functional-equivalence analysis, and his analysis in general, is insufficiently detailed to permit meaningful review.

### A. *Medical Equivalence*

Moreno's version of the number of asthma attacks that Maricelis suffered in 2002 is allegedly indicated by "7 emergency room and emergency physician treatments for asthma." *See* App. Br. at 13. There is substantial evidence in the record to support the ALJ's finding that Moreno has shown evidence of only three "attacks," between March 21, 2002 and March 24, 2003, that rise to the level of severity required under the Commissioner's § 3.00C listing. The number of Maricelis's physician visits in 2002 does not accurately reflect the number of actual asthma attacks that Maricelis suffered that year.

The three qualifying attacks are as follows: First, on March 21, 2002, Maricelis was treated for acute asthma and an upper respiratory infection in the emergency room of Trinitas Hospital. Second, on the morning of May 28, 2002, Maricelis was treated at her doctor's office, for a "persistent cough, difficulty breathing and a lot of wheezing." At 11:13 p.m., the same night, Maricelis was treated for bronchitis, acute asthma, and early pneumonia at Trinitas Hospital. The Trinitas report indicates that Maricelis complained of "difficulty breathing . . . onset—this morning." Tr. at 255. Maricelis was discharged at 2:50 a.m. on May 29, 2002. Moreno argues that these two visits should have been counted by the ALJ as two separate asthma attacks in 2002. But because these two visits were due to a single "prolonged symptomatic episode" occurring within a 24 hour period, the symptoms constitute a single attack. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.00C ("Attacks of asthma, . . . are defined as prolonged symptomatic episodes lasting one or more

days...."). Third, on December 27, 2002, Maricelis received treatment for asthma, fever, dry cough and wheezing at Trinitas Hospital.

Moreno claims to have presented evidence of three additional asthma attacks during the relevant twelve (12) month period, for which she sought treatment from Dr. Helen Aguila of the Pediatric Pulminary Group at University Hospital. The record shows three such visits on October 1, 2002; December 10, 2002 and March 24, 2003. There is, however, substantial evidence that shows these visits were scheduled, regular examinations of Maricelis, not emergency visits. The three "Medication Instruction Sheets" in the record that document these visits indicate that Maricelis was given a routine examination; prescribed medication on a schedule based on the symptoms that she may expect to experience on any given day; and was given a date for her next appointment. See Tr. at 197–204. This evidence does not indicate asthma attacks of the severity apparent in the Trinitas Hospital records.

### B. *Cotter v. Harris and the ALJ's Analysis*

■ Appellant argues that the ALJ violated *Cotter* by not discussing the University Hospital records. As Judge Bassler correctly held, however, *Cotter* does not require an explanation from the ALJ for why evidence that is not probative has been rejected. *See Cotter*, 642 F.2d at 707. Under *Burnett v. Commissioner*, 220 F.3d 112, 121 (3d Cir.2000), an ALJ must "consider and explain his reasons for discounting all of the *pertinent* evidence before him in making his ... determination." *Id.* (emphasis added) (citing, among other cases, *Cotter*, 642 F.2d at 705). Because the University Hospital records do not indicate "[a]ttacks ..., in spite of prescribed treatment and requiring physician inter-

vention," they are not probative or pertinent to the ALJ's determination of disability.

Furthermore, the ALJ created a sufficiently developed record without discussion of the University Hospital documents because he explained in detail the other evidence that he relied upon and that which he rejected. This evidence includes the findings of a State Agency medical consultant, who found that Maricelis's impairments do not meet or medically equal any listing; and other medical opinions in the record, including Maricelis's treating physician, Dr. Abich, none of which indicate an impairment more serious than "moderate persistent asthma" or "chronic asthma, causing mild obstructive lung disease." *See, e.g.*, Tr. at 190–196 (Dr. Patel consultative examination diagnosing Maricelis with "chronic asthma, causing mild obstructive lung disease"); Tr. at 129 (Dr. Turcios finding that Maricelis suffered from Mild Persistent Asthma, complicated by Allergic Rhinitis, but that her physical exam revealed a "healthy school aged girl in no respiratory distress.").

### C. *Functional Equivalence*

■ Appellant's brief does not make any specific arguments regarding the ALJ's analysis of functional equivalence other than that the "ALJ simply announced his findings without much explanation and predictably found appellant not to suffer an 'extreme' limitation in any one of th[e] six domains or a 'marked' limitation in any two of those domains.... [A]t the third and fourth steps of the sequential evaluation the ALJ 'mailed in' his presumptive self-serving denial without bothering to explain how the evidence led to his conclusions." App. Br. at 8.

The ALJ's Opinion shows that he found that Maricelis demonstrated a slight limitation in the first domain, "acquiring and

using information;" a slight limitation in the second domain, "attending and completing tasks;" a slight limitation in the third domain, "interacting and relating with others;" a moderate limitation in the fourth domain, "moving about and manipulating objects;" no limitations in the fifth domain, "caring for oneself;" and a moderate limitation in the sixth domain, "health and physical well-being." *See* Tr. at 20–22; 20 C.F.R. § 416.926a (b)(1).

The District Court properly rejected Moreno's claim that the ALJ's explanation of these findings was insufficient, because the ALJ went through each of the six domains and gave an explanation for his findings, citing to the medical treatment records discussed above; teacher questionnaires completed by Maricelis's teachers; a "daily living questionnaire" completed by Maricelis's mother, among other things. The ALJ noted which evidence he gave significant weight to and which he discounted, with reasons. *See, e.g.,* Tr. at 20 (The ALJ notes that he did not give significant weight to the teacher questionnaire because the limitations at school that Maricelis's teacher described were "clearly not related to the claimant's sole severe impairment of asthma.").

The District Court therefore correctly found that the ALJ's discussion permitted "meaningful review." *Burnett,* 220 F.3d at 119–20; *Jones v. Barnhart,* 364 F.3d 501, 506 (3d Cir.2004). The ALJ "does not need to use particular language or adhere to a particular format in conducting his analysis." *Jones,* 364 F.3d at 505.

## IV. Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court in all respects.