**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19–1006
_____


Maria Torres Nazario,
                    Appellant

v.

Commissioner Social Security


_____


On Appeal from the United States District Court
for the District of New Jersey
(District Court No. 2:16-cv-05483)
District Court Judge:  Honorable Madeline Cox Arleo

_____


Argued on September 17, 2019

(Opinion filed: November 20, 2019)

Before:  KRAUSE, MATEY, and RENDELL, <u>Circuit Judges</u>



Jon C. Dubin **(Argued)**
Rutgers University
Urban Legal Clinic
123 Washington Street
Newark, NJ 07102


                    Counsel for Appellant

Jordana Cooper **(Argued)**
Social Security Administration
Office of General Counsel SSA/OGC/Region III
300 Spring Garden Street
6th Floor
P.O. Box 41777
Philadelphia, PA 19123

Counsel for Appellee

———————

O P I N I O N[*]

———————

**RENDELL**, Circuit Judge.

Maria Torres Nazario ("Nazario") appeals an order of the United States District Court for the District of New Jersey affirming an Administrative Law Judge's ("ALJ") denial of Nazario's applications for Social Security Disability Insurance Benefits and Supplemental Security Income, which were initially denied by the Commissioner of the Social Security Administration ("the Administration" or "the Commissioner"). Because the ALJ's judgment was not supported by substantial evidence, we reverse the District Court's order and remand this case to the District Court with direction to remand the case to the Social Security Administration to award Nazario benefits.

———————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

**I.**[1]

In February 2012, Nazario began outpatient mental health treatment at Mount Carmel Guild Behavioral Health Center. Doctor Carla Hammond, M.D., became Nazario's treating physician for her mental health issues.

The record contains Dr. Hammond's various treatment notes documenting Nazario's progress, prognosis, symptoms, and other aspects of Dr. Hammond's treatment, which occurred during biweekly treatment sessions. On June 1, 2012, Dr. Hammond performed a full psychiatric evaluation of Nazario. Dr. Hammond found that Nazario suffered from anxiety, panic attacks, poor sleep, self-cutting, and arthritis and increased Nazario's prescription dosage. Dr. Hammond's other treatment notes indicate that Nazario suffered from specific long-term mental issues in relation to Dr. Hammond's broader diagnosis that Nazario was depressed and anxious. Dr. Hammond noted that Nazario had suffered from physical and emotional abuse, rape, and molestation by family members and significant others. Dr. Hammond also noted that Nazario had attempted suicide and engaged in other dangerous behaviors such as self-mutilation.

On June 24, 2013, Dr. Hammond prepared a mental residual functional capacity ("RFC") assessment. Dr. Hammond found that Nazario was "[u]nable to meet competitive standards" in three areas: completing a normal workday and workweek without interruptions from psychologically based symptoms; getting along with co-

---

[1] Because we write for the parties, who are familiar with the facts and the procedural posture to date, we only include what is necessary to explain our decision.

workers or peers without unduly distracting them or exhibiting behavioral extremes; and responding appropriately to changes in routine work settings. App. 1067. Dr. Hammond also found that Nazario would not be able to understand and carry out complex directions. She indicated that Nazario's condition would cause her to miss work more than four times a month, her impairment had lasted and could be expected to last more than twelve months, and her impairments were reasonably consistent with the symptoms and functional limitations described in the assessment.

In this June 2013 RFC report, Dr. Hammond made several direct medical observations that relate to her conclusions about Nazario's mental residual functional capacity. Dr. Hammond found that Nazario's symptoms of anxiety and depression had "persisted but to [a] lesser extent." App. 1065. In response to the prompt, "[d]escribe the *clinical findings* including results of mental status examination that demonstrate the severity of your patient's mental impairment and symptoms," Dr. Hammond noted Nazario's "[d]epressed mood + affect; poor motivation + energy." *Id*. Hammond described Nazario's prognosis as "mediocre." *Id.* Dr. Hammond also noted that Nazario suffered from a variety of symptoms that could support the conclusion that she would regularly miss work: "Anhedonia or pervasive loss of interest in almost all activities;" "Decreased energy;" "Generalized persistent anxiety;" "Impairment in impulse control;" "Emotional withdrawal or isolation;" "Sleep disturbance;" and "Easy distractibility;" among others. App. 1066.

On June 19, 2014, Advanced Practice Nurse Olayinka Aramide, a member of Nazario's treating team at Mount Carmel Guild Behavioral Center, prepared a second

4

mental RFC assessment. Aramide found that Nazario was "[u]nable to meet competitive standards" in performing at a consistent pace without an unreasonable number and length of rest periods and understanding, remembering, and carrying out detailed instructions. App. 1088–89. Aramide also found Nazario's condition would cause her to miss more than four days per month of work, her impairment has lasted or will last more than twelve months, and that her impairments are consistent with the symptoms of functional limitations described in Aramide's assessment.

The record also contains reports and evaluations from several physicians who did not treat Nazario. For instance, on December 17, 2012, Dr. Steven Yalkowsky, Ph.D., a consultant physician who examined Nazario but did not treat her, performed a one-off consultative psychological evaluation for the state disability agency in relation to Nazario's application for Social Security benefits. Yalkowsky observed no "abnormal thought content" and found Nazario "logical, coherent, and goal directed." App. 1009. Dr. Yalkowsky gave Nazario a Global Assessment of Functioning score of 55. Dr. Yalkowsky also noted that Nazario claims to suffer from self-isolation, panic attacks, self-destructive behavior, feelings of worthlessness, and sleep difficulties. Yalkowsky stated, "Ms. Torres does not have a driver's license and further indicated that she had a panic attack while taking the road test. She further indicated that she generally avoids using public transportation because she finds it to be anxiety provoking; although, [she] took the bus on this particular day." App. 1009. Yalkowsky found no evidence of "malingering or other attempts at exaggerating her disability." App. 1010.

5

On January 16, 2013, Dr. Joseph Bencivenne, Ph.D., a non-treating, non-examining physician on staff at the New Jersey state disability agency, prepared a mental RFC assessment for Nazario. Dr. Bencivenne, after reviewing medical records available in January 2013, including available treatment notes from Dr. Hammond and the reports of consulting physicians like Dr. Yalkowsky (but not the 2013 or 2014 RFCs from Nazario's treatment team), found Nazario had moderate limitations in her social functioning and concentration, pace, and persistence capacities. Dr. Bencivenne also found that Nazario suffered from only "mild" restriction of activities of daily living. App. 93.

On April 8, 2013, Dr. Robert Campion, Ph.D., a non-treating, non-examining physician on staff at the New Jersey state disability agency, prepared an additional mental RFC assessment. He, like Dr. Bencivenne, did not examine Nazario and reviewed only medical records available in April 2013 (which similarly did not include the 2013 or 2014 RFCs from Nazario's treatment team). Dr. Campion found that Nazario had moderate limitations in her social functioning and concentration, pace, and persistence capacities. Dr. Campion affirmed Dr. Bencivenne's findings.

The ALJ held a hearing after which he issued a decision denying Nazario's applications on December 8, 2014. During the course of the hearing, Nazario testified that: she obtained an online degree because her impairments made her unable to attend requisite classes, suffers from panic attacks triggered intermittently by a wide variety of daily occurrences, experiences a loss of interest in activities, feels isolated, sleeps only four to five hours a night, and prefers "just laying down in [her] bed alone, in the dark,"

6

App. 80. Nazario testified that she only leaves her home to do errands like food shopping and clothes shopping when her family takes her out and that she does not interact with friends; she needs someone else to call her in the morning to get her up to get her children out to school; and she sometimes misses therapy sessions because she is unable to interact with others or get out of bed. Nazario also testified that she had engaged in self-mutilation as recently as a month before the hearing.

The ALJ found that Nazario "has the following severe impairments: degenerative disc disease, right knee arthritis, systemic lupus erythematous, hypothyroidism, obesity, depression and migraines." App. 48. The ALJ found that the severity of Nazario's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of the Social Security Administration's listed impairments. The ALJ found that Nazario had "moderate restriction" in "activities of daily living;" "moderate difficulties" in "social functioning" and "concentration, persistence, or pace;" and no episodes of decompensation. App. 50. The ALJ seemed to be impressed that she had completed a degree online and was raising two children.

The ALJ submitted a nine-page interrogatory to the vocational expert with three alternative hypotheticals. The first hypothetical stated Nazario's limitations as having occasional interaction with coworkers, supervisors, and the general public and asked if Nazario could work; the vocational expert responded affirmatively. However, the ALJ also submitted two alternative interrogatories: to the second interrogatory, with a six-hour-per-day limitation on work, the vocational expert responded that "working only 6 hours per day would preclude all work," App. 300; to the third interrogatory, with a

7

limitation that Nazario would "require a minimum of two absences per month," App. 301, the vocational expert responded that "absence of 2 days per month would preclude all work," App. 302.

After describing Nazario's treatment and the results of her consultations and evaluations by non-examining physicians, the ALJ's analysis led him to the conclusion that "[t]he claimant's depression and anxiety do not support a finding of disability." App. 55. Instead, the ALJ found:

> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate . . . .

App. 57.

The District Court affirmed the Social Security Administration's decision to deny Nazario benefits. After describing the factual and procedural history of Nazario's application and identifying the relevant legal standard, the District Court ruled that the ALJ was justified in according less weight to Nazario's treating team because the ALJ's decision was supported by other record evidence and because the June 2013 Hammond RFC and the June 2014 Aramide RFC were both check-box reports. The District Court also rejected Nazario's various arguments that the ALJ's decision was defective because the ALJ failed to: properly craft the hypotheticals he submitted to the vocational expert; correctly evaluate Nazario's credibility as a witness; appropriately develop the factual record; and consider the cumulative effect of Nazario's impairments. Nazario timely appealed.

8

**II.**[2]

The Social Security Administration reviews applications for disability benefits by conducting a five-step analysis. First, it decides whether the claimant is engaged in substantial gainful activity. *See Brewster v. Heckler*, 786 F.2d 581, 583 (3d Cir. 1986). Then, if the applicant is not, it decides whether he or she suffers from a severe impairment or a combination of impairments that is severe. *Id.* Next, it reviews a list of impairments that preclude gainful work. *Id*. at 583–84. If the claimant's impairment is not on that list, the Administration determines whether the claimant has the residual functional capacity to perform their past relevant work, *i.e*., "that which [the] individual is still able to do despite the limitations caused by his or her impairment(s)." *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (quoting *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000)). Finally, if the claimant cannot return to past work, the Administration determines whether the claimant's impairment precludes adjustment to any other available work. *See Brewster*, 786 F.2d at 584. If the claimant is unable to adjust to any available work, she is entitled to benefits.

We review the Administration's final decision under the substantial evidence standard. We ask if the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Substantial evidence requires "more than a mere scintilla" but less than a preponderance

---

[2] The District Court had jurisdiction pursuant to 42 U.S.C. § 405(g) and we have jurisdiction pursuant to 28 U.S.C. § 1291.

of the evidence. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). We do not "weigh the evidence or substitute [our] conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). A single piece of evidence:

> will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

## III.

### A. The ALJ's decision is not supported by substantial evidence.

Nazario argues on appeal that the Administration's decision to deny her benefits is not supported by substantial evidence. For a number of reasons outlined below, we agree.

First, the ALJ ignored probative medical evidence from the reports of Nazario's treating team. Although the ALJ's decision states that "[t]he record is devoid of any treating source statement" that contradicts his finding that Nazario's depression and anxiety did not amount to a disability, App. 55, there is in fact a substantial amount of highly probative, contradictory evidence from Nazario's treatment team that *did* exist in Dr. Hammond's treatment notes and elsewhere—but the ALJ failed to address it.

In *Morales*, we stated:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the

10

patient's condition over a prolonged period of time. . . . The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.

*Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). We have also held that although the government "may properly accept some parts of the medical evidence and reject other parts," the government must "provide some explanation for a rejection of probative evidence which would suggest a contrary disposition." *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994).

The ALJ ignored Dr. Hammond's finding that Nazario did not meet competitive standards in two areas of social functioning: getting along with co-workers without unduly distracting them or exhibiting behavioral extremes and responding appropriately to changes in a routine work setting. Dr. Hammond's finding that Nazario would be unable to meet competitive standards in these social categories is probative evidence that adds to Nazario's other day-to-day social functioning issues like her panic attacks and self-reported tendency to "snap," App. 52. The ALJ also ignored that Dr. Hammond responded to the prompt, "Describe the *clinical findings* including results of mental status examination that demonstrate the severity of your patient's mental impairment and symptoms" by noting Nazario's "[d]epressed mood + affect; poor motivation + energy." App. 1065. Over the course of treatment, Dr. Hammond noted that Nazario suffers from a variety of symptoms that could support the conclusion that she would regularly miss work: "Anhedonia or pervasive loss of interest in almost all activities;" "Decreased

11

energy;" "Generalized persistent anxiety;" "Emotional withdrawal or isolation;" and "Sleep disturbance," among others. App. 1066. Similarly, Nurse Amaride found in her mental residual functional capacity report that Nazario suffered from "[r]ecurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom" occurring two to three times per week. App. 1087. The ALJ's failure to address Hammond's and Amaride's findings on these issues—or to address the vocational expert's related responses to the ALJ's alternative hypotheticals— suffices to show that his decision to reject the opinions of Nazario's treatment team did not satisfy the substantial evidence standard.

Second, in support of his finding that Nazario's depression and anxiety did not require a finding of disability, the ALJ cited two early-2013 reports prepared by non-examining, non-treating physicians, Dr. Bencivenne and Dr. Campion.[3] However, neither Dr. Bencivenne nor Dr. Campion had access to all of Nazario's medical records. Neither Dr. Bencivenne nor Dr. Campion had access to two important pieces of evidence: Dr. Hammond's June 2013 RFC report and Nurse Amaride's June 2014 RFC report, neither of which had been completed at the time of their non-examining evaluations in

---

[3] The ALJ's decision specifically states that the ALJ "concurs with the assessment of the DDS psychological consultants [Bencivenne and Campion] who opined that the claimant had [no] more than a moderate limitation in [social functioning]." App. 50. The ALJ also concluded that his "conclusion is consistent with the assessment of the DDS medical consultants [Bencivenne and Campion] who opined that the claimant could perform the simple tasks of unskilled work." *Id*. Finally, the ALJ maintained that his "residual functional capacity assessment is supported by . . . [t]he assessment of the highly credible State Agency medical and psychological consultants only with respect that the claimant was not disabled." App. 55.

2013.  As such, the Bencivenne and Campion reports reached conclusions that did not incorporate the entire treatment record.[4]

The reports of non-examining physicians are generally given less weight than those of examining and treating physicians.  *See Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) ("[I]t is well established that the opinions of a doctor who has never examined a patient have less probative force as a general matter, than they would have had if the doctor had treated or examined him." (alteration in original) (citation and internal quotation marks omitted)); *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357 (3d Cir. 2008).  Where the non-examining physician does not have access to the whole record, the non-examining physician's evaluation is entitled to even less weight.  For instance, in *Morales*, we noted that the non-examining physicians' "report was prepared without the benefit of an examination of Morales, [an examining physician's] report, [another examining physician's] tests, and [the treating physician's] work-skills assessment."  *Morales*, 225 F.3d at 320.  As a result, in that case we ruled that the ALJ's reliance on the non-examining physician's report did not "meet the substantiality test." *Id.*

Here, the ALJ's reliance on the non-examining evaluations of Dr. Bencivenne and Dr. Campion rather than Dr. Hammond and Nurse Aramide similarly did not satisfy the substantial evidence standard.  Because Dr. Bencivenne and Dr. Campion did not have

---

[4] Drs. Bencivenne and Campion did, however, have access to Hammond's treatment notes at the time of their reports, which Bencivenne and Campion analyzed and incorporated.

access to two crucial pieces of evidence—the June 2013 Hammond RFC and the June 2014 Amaride RFC—their reports were not entitled to more weight than the reports of Nazario's treating team without substantially more explanation and analysis than what the ALJ offered in this case.

Third, in support of his finding that Nazario's depression and anxiety did not indicate that she suffered from a disability, the ALJ twice cited to Dr. Hammond's comments in her treatment notes that Nazario's condition was "stable." In his summary of Dr. Hammond's notes, the ALJ stated:

> When seen on January 18, 2013, Dr. Hammond noted that the claimant was doing well on her psychiatric regimen; that she was sleeping well; that her appetite was ok; that her energy level was good; and that she was compliant with prescribed treatment. Dr. Hammond stated that the claimant was stable. Subsequent progress notes continued to note that the claimant was doing well.

App. 52. Later on, the ALJ specifically noted that "[i]n fact, treating psychiatrist Hammond opined that the claimant was stable." App. 55. But stability does not equate to a specific medical condition. Indeed, someone can be stable with a chronic disabling malady or stable on a particular day or in a certain environment.

In *Morales*, we held that it was not "proper for the ALJ to reject [the treating physician's] opinion based on [the treating physician's] notation that Morales was stable with medication." *Morales*, 225 F.3d at 319. Instead, because "the work environment is completely different from home or a mental health clinic," the treating physician's "observations that [the claimant] is 'stable and well controlled with medication' during treatment does not support the medical conclusion that [the claimant] can return to work."

14

*Id.*  Here, the ALJ's reliance on Hammond's treatment note that Nazario was "stable" therefore does not satisfy the substantial evidence standard.[5]

Fourth, the ALJ inappropriately relied on evidence about Nazario's in-home activities of daily living without explaining how they contradict a finding that Nazario suffers from work-related disability.  Specifically, the ALJ stated that his residual functional capacity finding "is supported by . . . the claimant's activities of daily living," App. 55, which the ALJ described as follows:

> Although the claimant testified that she depends on family members to take her run errands [*sic*] and that she never goes food shopping alone, the evidentiary record indicates that the remainder of her activities of daily living are fully functional. . . .  [S]he is able to take care of herself and her minor children, listen to Christian music, watch television, prepare meals and perform household chores such as cleaning, ironing and doing the laundry.

App. 50.  The ALJ also highlighted that Nazario "was able to obtain a college degree online." *Id.*

In *Smith v. Califano*, we held that "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity. . . .  It is well established that sporadic or transitory activity does not disprove disability."  637 F.2d 968, 971–72 (3d Cir. 1981).  Nazario's activities of daily living took place in Nazario's home at her own pace.  Just because Nazario was not "excluded from all forms of human and social activity" and engaged in "sporadic or transitory activity" does not

---

[5] Although the ALJ in this case also culled from Dr. Hammond's treatment notes "that [Nazario] was sleeping well; that her appetite was ok; [and] that her energy level was good," App. 52, these more specific observations suffer from the same flaw as the observation that Nazario was "stable"—they do not obviously translate from the treatment setting to the work setting without more substantial analysis.

15

mean that she is not disabled for work purposes. *Id.* Without more explanation as to how her activities would translate to the workplace, Nazario's daily in-home activities (especially activities like "listening to Christian music") are not substantial evidence that Nazario is not disabled.

This flaw in the ALJ's reasoning had a domino effect that infected his hypothetical to the vocational expert. The hypotheticals described Nazario as being able to "have occasional interaction with coworkers, supervisors and the general public." App. 297, 299, 301. The ALJ put a positive spin on her social skills and did not sufficiently explain why he chose to describe Nazario's social limitations in this way despite the various pieces of evidence indicating that Nazario had substantially more serious social limitations and problems with activities of daily living.

## B. Nazario is entitled to benefits.

We will reverse the District Court's decision with direction to the District Court to direct the Administration to award benefits. We may direct a district court to award benefits "when the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Morales*, 225 F.3d at 320 (internal quotation marks and citations omitted). The record relating to Nazario's disability is unlikely to benefit from further development. *Id.* In fact, the record, especially the vocational expert's answers to the ALJ's second and third hypotheticals, contains substantial evidence that Morales suffers from a severe mental disability that renders her unable to engage in substantial gainful activity. Additionally, Nazario's application for benefits, which was filed more than

16

seven years ago, has been delayed. *Id*. And the delay in Nazario's case has not been

caused by "any error of the claimant." *Id*. In our view, substantial evidence supports a

finding by the Administration that Nazario is disabled and entitled to disability benefits.

**IV.**

We will reverse the District Court's judgment with direction to the District Court

to remand the case to the Social Security Administration to award benefits to Nazario.